Argued and submitted July 24, 1996, judgment of conviction affirmed; remanded for resentencing January 29, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## MARC RAY TRICE,
*Appellant.*

## (F93-07-0605C; CA A86026)

933 P2d 345

Eric R. Johansen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Eleanor E. Wallace, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant, who was 16 years old at the time, was waived to adult court to be tried on a number of charges relating to the 1993 murder of a 15-year-old girl. He also was adjudicated in juvenile court on a number of other charges related to the murder. He appeals his sentences for the adult convictions. We remand for resentencing.

Defendant was waived to adult court, under ORS 419C.349, to be tried on three counts of aggravated murder and one count each of felony murder, murder and first-degree assault. He waived trial by jury and the court convicted him of murder and first-degree assault. He was also adjudicated in juvenile court on charges that he committed acts which, if committed by an adult, would constitute first-degree rape, first-degree sexual abuse and two counts of second-degree assault. He was found to be within the jurisdiction of the juvenile court for committing the equivalent of second-degree assault.

For the juvenile adjudication, defendant was placed within the jurisdiction of the juvenile court for an indefinite period not to extend beyond his 21st birthday. At sentencing for the adult conviction for murder, which was before the same judge as in juvenile court, defendant was sentenced to a durational departure of 256 months to run consecutive to the juvenile court's jurisdiction. On the first-degree assault charge, the court determined that defendant was a dangerous offender and again departed, imposing a 130-month determinate sentence and a 230-month indeterminate sentence. That sentence was ordered to run concurrent with the sentence for murder and consecutive to the juvenile court's jurisdiction.

■    Defendant first argues that the court did not have authority to impose the adult sentences consecutive to the juvenile dispositions. He relies on ORS 137.123, which provides:

"(1)   A sentence imposed by the court may be made concurrent or consecutive *to any other sentence which has been previously imposed or is simultaneously imposed upon the*

*same defendant.* The court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences.

"(2)   If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet completed, the court may impose a sentence concurrent with or consecutive to the other sentence or sentences." (Emphasis supplied.)

Defendant contends that, under ORS 137.123, a sentence may only be imposed consecutive to another "sentence" and, because a juvenile disposition is not a "sentence," the trial court here lacked authority to impose defendant's adult sentences consecutive to the juvenile adjudication.

The state responds by arguing that a disposition that a child is within the jurisdiction of the juvenile court is a "sentence" for purposes of ORS 137.123. The state bases that argument on three factors: (1) that the word "sentence" is not statutorily defined; (2) that the juvenile code does not expressly state that commitment to a juvenile facility is *not* a sentence, and; (3) that there is nothing inherent about the word "sentence" that refers only to adult punishment. Thus, the state concludes, there is no reason to read ORS 137.123 to preclude a court from making a sentence on an adult conviction consecutive to a juvenile adjudication.

In determining whether a juvenile adjudication is a "sentence" for purposes of ORS 137.123, we must decide whether the legislature intended such a result in its adoption of the statute. *See PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993) (to interpret a statute, we must determine the intent of the legislature). To that end, we first examine the text and the context of the statute. *Id.* The language of the statute is our starting point because it is the best evidence of the legislature's intent. *Id.*

As noted above, ORS 137.123 provides that additional sentences may be imposed consecutive to "any other

*sentence* which has been previously imposed or is simultaneously imposed upon the same defendant." (Emphasis supplied.) "Sentence" is not defined in that statute, nor is it defined in any other provision of chapter 137. In addition, although we have addressed whether certain dispositions are a "sentence," *see, e.g., State v. Guyton*, 126 Or App 143, 147, 868 P2d 1335, *rev den* 319 Or 36 (1994) (under sentencing guidelines, a probationary term is a "sentence"); *State v. Vasby*, 101 Or App 1, 4, 788 P2d 1024 (1990) ("[w]hen ordered, restitution may be part of a sentence."), neither this court nor the Supreme Court has articulated a general definition of the term.

One rule of construction that we use to determine the legislature's intent is that words of common usage are to be given their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. The term "sentence" is generally defined as "the judgment passed by a court or judge on a person on trial as a criminal or offender" and as an "order by which a court or judge imposes punishment or penalty upon a person found guilty." *Webster's Third New International Dictionary* 2068 (unabridged ed 1993). Under that general definition, in the absence of specific inclusion or exclusion by a statutory provision, in order for a particular disposition to be a sentence, the disposition must be ordered by the court, it must be a disposition that affects a criminal or an offender, and it should serve to punish or penalize.

Without doubt, most of the various dispositions that a criminal defendant faces following conviction for crimes or offenses under the provisions of section 137 and the sentencing guidelines are "sentences," as defined above. The more difficult question is whether a juvenile adjudication comes within the general definition of a "sentence" as discussed above. Again, looking first to text and context, we note that nowhere in the juvenile code provisions relating to dispositional possibilities for juveniles does the word "sentence" appear. The available dispositions for a child found to be within the jurisdiction of the juvenile court for committing an act that, if committed by an adult, would be a crime, include wardship of the court, diversion, probation, restitution, detention, fines, and community service or service to the victim. ORS 419C.440. Many of these potential dispositions are

the same or similar to dispositions that might follow an adult conviction. (For example, probation, ORS 137.540; detention, ORS 137.310; restitution, ORS 137.106; fine, ORS 137.010; community service, ORS 137.128.) Further, many aspects of the juvenile adjudication process parallel and require the same protections of a trial for a crime or offense. ORS 419C.270; *State v. Stewart*, 123 Or App 147, 150, 859 P2d 545 (1993), *aff'd sub nom State v. Stewart/Billings*, 321 Or 1, 10, 892 P2d 1013 (1995); *see State v. Thornton*, 41 Or App 469, 472, 599 P2d 1160 (1979) (after an adjudication on the merits, state barred from trying defendant as an adult by double jeopardy). In addition, juvenile adjudications play a role in sentencing on an adult conviction, because they may be used in calculating a defendant's criminal history score. OAR 253-04-006; *Stewart/Billings*, 321 Or at 10.

On the other hand, there are significant distinctions between the juvenile and adult criminal process. First, there are a number of dispositions available in a juvenile proceeding that are not available in a criminal context. Further, the statutes make clear that "[a]n adjudication by a juvenile court that a child is within its jurisdiction *is not a conviction of a crime or offense,*" *former* ORS 419C.400(4),[1] (emphasis supplied). Further, adjudication may result in an "order" of detention, ORS 419C.453, or commitment to the Child Service Division for placement to a residential facility, ORS 419C.478. In addition, it has long been accepted that "[j]uvenile courts are concerned with rehabilitation, not punishment." *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 574, 857 P2d 560 (1993). Under *former* ORS 419A.002, the primary purpose of placing a child within the jurisdiction of the juvenile court was to try to rehabilitate the child by providing the child care, guidance, treatment and control, with protection of the community also a consideration.[2]

After considering the text and context of ORS 137.123, as well as the juvenile code, we must conclude that a

---

[1] Defendant's adult convictions and sentencing occurred before the effective date of the 1995 amendments to the juvenile code.

[2] We do not address whether any of the 1995 amendments to the juvenile code changed the purpose of the juvenile process. However, we note that ORS 419A.002 did incorporate the purposes delineated in *former* ORS 419A.002.

disposition that a child is within the jurisdiction of the juvenile court following a juvenile adjudication is not a "sentence" as that term is used in ORS 137.123. Therefore, the court lacked authority to impose a sentence to run consecutive to the juvenile court's jurisdiction.

The state argues alternatively that the court has inherent authority to structure sentences as it sees fit, and that the court's decision to impose the adult sentences consecutive to the juvenile court adjudication was within that authority. The state relies primarily on *State v. Jones*, 250 Or 59, 440 P2d 371 (1968). In *Jones*, the court held that even though, at that time, there were no statutes authorizing imposition of concurrent or consecutive terms, the court had inherent authority to do so "when the occasion demands it." *Id.* at 61. Since that time, however, the legislature has enacted ORS 137.123, which specifies the parameters of the court's discretion as to concurrent and consecutive sentences. As noted above, ORS 137.123 provides that a sentencing court may impose consecutive sentences only in accordance with the provisions of that section. Accordingly, we conclude that with the enactment of ORS 137.123, the legislature intended to eliminate any "inherent authority" that the court might have with respect to consecutive sentences. *See State v. Davis*, 315 Or 484, 491, 847 P2d 834 (1993) (consecutive sentences are governed by the sentencing guidelines).

Defendant next assigns error to the court's imposition of a dangerous offender sentence. He argues that the record does not support the trial court's finding that he suffers from a severe personality disorder. Defendant bases that argument on the fact that the experts who testified stated that because defendant was under the age of 18, technically, he could not be diagnosed with a severe personality disorder. Defendant reasons that, in view of that evidence, the court could *not* find that he suffers from a "severe personality disorder" as the statute requires and therefore, the court lacked authority to impose a dangerous offender sentence under ORS 161.725.

ORS 161.725 provides in pertinent part:

"(1)   Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment

for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exist:

"(a)   The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another.

"(b)   The defendant is being sentenced for a felony that seriously endangered the life or safety of another, the defendant has been previously convicted of a felony not related to the instant crime as a single criminal episode and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another.

"(c)   The defendant is being sentenced for a felony that seriously endangered the life or safety of another, the defendant has previously engaged in unlawful conduct not related to the instant crime as a single criminal episode that seriously endangered the life or safety of another and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

ORS 161.735 sets out the process for the court to evaluate whether a defendant is a dangerous offender:

"(1)   Upon motion of the district attorney, and if, in the opinion of the court, there is reason to believe that the defendant falls within ORS 161.725, the court shall order a presentence investigation and an examination by a psychiatrist or psychologist. The court may appoint one or more qualified psychiatrists or psychologists to examine the defendant in the local correctional facility.

"* * * * *

"(5)   Upon receipt of the examination and presentence reports the court shall set a time for a presentence hearing, unless the district attorney and the defendant waive the hearing. At the presentence hearing the district attorney

and the defendant may question any psychiatrist or psychologist who examined the defendant pursuant to this section.

"(6)  *If,* after considering the presentence report, the examination reports and the evidence in the case or [from] the presentence hearing, *the court finds that the defendant comes within ORS 161.725, the court may sentence the defendant as a dangerous offender.*" (Emphasis supplied.)

Defendant is correct that the psychiatrists evaluating him did not formally conclude that he had a "severe personality disorder." Dr. Rice, testifying for the state, stated that he could not "technically" diagnose defendant as having a severe personality disorder, because the DSM III-R lists age 18 as the age at which such a formal diagnosis can be made. However, he also said that that line was arbitrary and that, because of defendant's personality structure, he did not expect defendant to change much before he turned 18 and could be formally diagnosed. He diagnosed defendant with a conduct disorder as well as an anti-social personality disorder. He also stated his belief that defendant has a psychopathic personality organization that is a malignant form of narcissistic personality disorder. Because of the combination of these disorders, he believed it was unlikely that defendant would ever learn self-control. Rice indicated that past behavior is usually the best predictor of future behavior, and that because defendant's past behavior was rife with increasingly harmful violence, he was likely to commit a violent act again. When asked whether he had any doubt in his mind that defendant has a "severe personality disorder with a propensity for continued violence that would be a threat to the safety of the community," Rice responded, "No."

Dr. Johnson, in a report prepared for defendant's presentence investigation, stated that it is uncommon to assign personality disorders to an adolescent. However, he concluded that defendant suffered from a narcissistic personality disorder and a borderline personality disorder and that "these disorders appear to be well established and there is reason to believe they will be durable." He concluded also that defendant was at high risk for committing future violence.

While it is true that none of the experts here stated that defendant suffered from a "severe personality disorder," we do not agree that there must be such a conclusion by an expert in order for the court to reach that conclusion. The Supreme Court, in *State v. Huntley*, 302 Or 418, 730 P2d 1234 (1986), has made it clear that it is not necessary for a psychiatrist or psychologist officially to diagnose a defendant with a severe personality disorder in order for a court to find that a severe personality disorder exists for purposes of the dangerous offender statutes.[3] The court explained that although diagnostic criteria set out in accepted psychiatric manuals, such as the DSM III, may be helpful to the court in making its determination, the question of whether a defendant suffers from a severe personality disorder indicating a propensity toward criminal activity is ultimately one for the court:

> "[T]he essence of the dangerous offender classification is not one specific diagnosis, but any significant mental or emotional disorder or disturbance—a lay concept—and that the finding should be based on the *judge's evaluation* of all the information gathered, not exclusively on the clinical diagnosis." (Emphasis supplied.)

*Id.* at 430, *citing* Guides for Sentencing, Dangerous Offenders, Council of Judges of the National Council on Crime and Delinquency (2d ed 1974). *See also State v. Odoms*, 117 Or App 1, 7, 844 P2d 217 (1992) (sentencing court is not bound by psychiatric expert's evaluation).

We conclude that the trial court made the findings required by the statute to impose a dangerous offender sentence and, as discussed above, those findings are supported by the record. We affirm defendant's remaining assignments of error without discussion.

Judgment of conviction affirmed; remanded for resentencing.

---

[3] Some of the language in ORS 161.725 and ORS 161.735 has changed since *Huntley* was decided, but those changes do not affect the analysis here.