Argued and submitted December 19, 2000, affirmed April 25, 2001

MARC A. BURNETT,
*Appellant,*

*v.*

Robert LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

(99-06-30570-M; CA A107946)

25 P3d 337

Steven M. Stoddard filed the brief for appellant.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Plaintiff, an inmate at Snake River Correctional Institution, appeals from a judgment dismissing his petition for a writ of habeas corpus. In his petition, plaintiff alleged that he was unlawfully confined because the Board of Parole and Post-Prison Supervision (Board) erroneously deferred his parole release date from 1999 to 2001, based on its finding that he suffered from a present severe emotional disturbance that caused him to be a danger to the health or safety of the community. We affirm.

■     Defendant moved to dismiss plaintiff's petition after issuance of the writ. *See* ORS 34.680(1) (motion to dismiss may be based on pleadings as well as supporting evidence); *McClintock v. Schiedler*, 123 Or App 334, 336, 859 P2d 580 (1993) (motion to dismiss after issuance of habeas corpus writ is functional equivalent of summary judgment motion). The trial court granted the motion. We review the record in the light most favorable to the nonmoving party. *Fort v. Palmateer*, 169 Or App 568, 570, 10 P3d 291 (2000).

The facts are not in dispute. Plaintiff is serving sentences for two first-degree rapes and a first-degree robbery committed in October 1987. Before the 1987 convictions, plaintiff had been convicted of kidnapping in California, of two counts of assault in Washington, and of battery and false imprisonment in Idaho. A number of plaintiff's offenses were committed while he was on parole. The Oregon crimes, for which plaintiff is serving sentences, involved two separate criminal episodes. In the first, plaintiff entered a store and robbed and raped an employee at knife point. In the second, plaintiff picked up a hitchhiker, raped her at knife point, and then indicated that he intended to anally sodomize her after he took a nap. The victim escaped while plaintiff took a nap, and plaintiff was apprehended shortly thereafter. He received 20-year sentences for each of the offenses. The Board overrode judicially imposed minimum sentences and established a prison term of 130 months, setting a parole release date of August 27, 1998. While serving his sentences, plaintiff violated a prison disciplinary rule by possessing contraband controlled substances in 1992. Plaintiff also violated

a prison disciplinary rule in 1993 by engaging in drug smuggling, and, as a result, the Board extended his sentence for 12 months. In 1996, the Board indicated that, pursuant to ORS 144.223, it would schedule plaintiff for a psychological examination before his exit interview.

In 1998, plaintiff was evaluated by Dr. Starr, a licensed psychologist. Plaintiff revealed to Starr that his criminal history included the above-mentioned crimes, as well as offenses involving drug possession and delivery, passing bad checks, theft, and forgery. He also revealed that his California kidnapping offense had involved rape of the victim; that during both his Idaho and Washington offenses, he had attempted to rape his victims; and that he had sexually abused his younger sister when she was a child. Plaintiff indicated that he thought he had committed the offenses for which he was incarcerated because he was angry and on drugs. Plaintiff further indicated that he had not used drugs since 1993, that he attended church regularly, and that he had joined Promise Keepers.

Starr administered various tests, one of which showed a defensive profile and another of which yielded a profile of questionable validity. Starr indicated that people with profiles similar to petitioner's tend to view themselves in a positive light, are likely to experience significant drug problems, and have little motivation or tendency to seek psychological treatment. They see little need to change their behavior. Starr diagnosed plaintiff with a narcissistic personality disorder. Starr expressed concern about the fact that plaintiff showed an erotic preference for violence and that he had erectile and orgasmic problems associated with consensual sex. Starr also considered plaintiff at risk for explosive, aggressive behavior at times. Starr recommended that plaintiff engage in long-term psychotherapy focusing on the self-centered, exploitive features of his character structure. Starr observed that, on three prior occasions when plaintiff was paroled, he did not do well. Starr concluded that if plaintiff were to be released on parole, he should be in a structured halfway house environment for at least a year.

After a hearing, the Board, "based on all the information it [considered] at this hearing, [found] that the doctor's diagnosis coupled with all the information it is considering, [resulted] in a finding of a present severe emotional disturbance such as to constitute a danger to the health and safety of the community." The Board specified that it had considered the matter under the laws in effect at the time of plaintiff's crimes. On administrative review, the Board stated:

"In this case, the Board considered the evaluation performed by Dr. Starr along with all of the information before the Board at the time of the hearing. Dr. Starr diagnosed [plaintiff] with an Axis II narcissistic personality disorder. Dr. Starr noted that [plaintiff] had admitted raping six women and noted concerns about [plaintiff's] erotic preference for violence. Dr. Starr also noted that [plaintiff's] prior failures on parole suggest that he tends not to do well on the street."

The Board therefore deferred plaintiff's parole release date for two years based on ORS 144.125(3) (1991).

■ Plaintiff petitioned for a writ of habeas corpus, arguing that, for several reasons, the Board erred in deferring his parole. As noted, the trial court dismissed the action after issuance of a writ, on the equivalent of a summary judgment. On appeal, plaintiff reasserts the arguments he made in the trial court. Plaintiff's arguments are based on OAR 255-60-005 (1987), which was in effect at the times he committed the crimes for which he is incarcerated. OAR 255-60-005 (1987) provided, in part:

"(1)   At any time prior to a prisoner's scheduled parole release date, the Board may conduct a parole release hearing to review the prisoner's parole plan, psychiatric/psychological reports, if any, and conduct while in confinement. Pursuant to ORS 144.125, the Board may order any available psychiatric/psychological report(s) from the Corrections Division.

"* * * * *

"(7)   If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such

as to constitute a danger to the health or safety of the community, is present, the Board may order a psychiatric/psychological report to consider the deferral of the scheduled parole release until a specified future date.

"(a) The psychiatric or psychological evaluation shall be conducted to determine if a severe emotional disturbance still exists or is in remission. The evaluation provided may consist of a diagnostic study, including a comprehensive evaluation of the individual's personality, intelligence level, personal and social adjustments, or other pertinent data. The evaluation should include recommendations for treatment or medication that would assist the prisoner in performing satisfactorily in the community upon release."

Plaintiff first argues that, under OAR 255-60-005(7) (1987), the Board had no authority whatsoever to order a psychological evaluation of him.[1] He notes that, under that rule, the Board may order a psychological report "[i]f the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present[.]" Thus, plaintiff reasons, the Board must have before it a record that indicates that a severe emotional disturbance is present *before* it may order a psychological report. Plaintiff notes that subsection (7)(a) of the rule specifies that a psychological report ordered by the Board is to be conducted to determine if a "severe emotional disturbance *still* exists * * *." Based on that text, plaintiff reasons that the Board in the present case could not have determined that the "record indicate[d] that a psychiatric or psychological condition of severe emotional disturbance" existed prior to its ordering the psychological evaluation, because no previous psychological evaluation had been conducted that diagnosed him with a "severe emotional disturbance."

Assuming for the sake of argument that plaintiff is correct that OAR 255-60-005(7) (1987) limits the Board's

---

[1] Plaintiff does not dispute that, under OR⌐ ⸳44.223, the Board had the authority to "require *any* prisoner being considered fc parole to be examined by a psychiatrist or psychologist before being released on ⸳arole." (Emphasis added.) Rather, he argues that the Board limited its statutory ⸳thority by promulgating OAR 255-60-005(7) (1987).

authority under ORS 144.223 to require psychological examinations, we nonetheless disagree with plaintiff's suggestion that the Board must already have a psychological evaluation on hand before it may order a new psychological evaluation. The rule expressly provides that the Board may order a psychological evaluation if "the *record* indicates" that a severe emotional disturbance is present. OAR 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(7) (1987) (emphasis added). As we noted in *Weidner v. Armenakis*, 154 Or App 12, 18, 959 P2d 623 (1998), *withdrawn by order* July 13, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998), the Board, in making parole release decisions, has a record that consists of information other than psychological evaluations, including information submitted by the Department of Corrections, by the parties, and by the crime victims, as well as information contained in presentencing reports. *See* ORS 144.185. The Board was entitled to consider all of the information in the record when it considered whether to order a psychological evaluation.

As plaintiff points out, there was positive information about him in the record before the Board. He had completed courses in word processing and in construction, had received positive reports for work at various locations, had completed sex-offender orientation and a sex-offender evaluation,[2] had completed anger-management courses, and had attended various religious programs. In 1990, plaintiff received an associate of arts degree from Chemeketa Community College, and, in 1993, he received a bachelor's degree in social sciences from Western Oregon State College. But the Board had negative information about petitioner as well. Specifically, the Board also had before it information about the nature of the offenses for which plaintiff was incarcerated and the nature of his previous offenses. Plaintiff's criminal history as related in the presentencing investigation report, along with the Board's findings at its initial prison term hearing, show a long-established pattern of abducting and raping women. The Board had information that plaintiff had not

---

[2] Plaintiff was on a waiting list for sex-offender treatment when the program was terminated.

done well on parole in the past. The Board also had information relating to instances of serious misconduct in prison, one of which resulted in plaintiff's sentence being extended by one year and his placement in the Intensive Management Unit (IMU) at the Oregon State Penitentiary. *See Bagby v. OSP*, 118 Or App 421, 427, 847 P2d 898, *rev den* 317 Or 396 (1993) ("transfer to IMU results from an assessment of the totality of factors that an inmate presents an extreme risk of escape, violence, or disruption of the safe, secure, and orderly operation of the facility"). We conclude that the trial court properly rejected plaintiff's argument that the Board failed to comply with OAR 255-60-005(7) (1987) by ordering him to undergo a psychological evaluation.

■ Plaintiff next asserts that, even if the Board had authority to order the psychological evaluation, that evaluation did not support its conclusion that he suffers from a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community." ORS 144.125(3) (1991). Plaintiff argues that, to satisfy that statute, the psychological evaluation itself must contain a "diagnosis" by the psychologist or psychiatrist of "present severe emotional disturbance such as to constitute a danger to the health or safety of the community." As we held in *Weidner*, ORS 144.125(3) (1991) contains no such requirement. 154 Or App at 17. OAR 255-60-005 (1987) also contains no such requirement. In that respect, the 1987 rule bears little resemblance to the version of the rule interpreted in *Peek v. Thompson*, 160 Or App 260, 264-65, 980 P2d 178 (1999), which this court interpreted to require that a psychiatrist's or psychologist's report make a "finding" of a "severe emotional disturbance" before the Board could defer parole release. Rather, the 1987 version of the rule requires the Board to determine the existence of a present severe emotional disturbance such as to constitute a danger to the health or safety of the community based on the record before it. A psychological evaluation is only a part of the record. The Board may use a current psychiatric or psychological evaluation to determine if a severe emotional disturbance "still exists or is in remission." OAR 255-60-005(7)(a) (1987). However, it is for the

Board, not the psychologist or psychiatrist, to make the ultimate determination as to whether the inmate suffers a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community." ORS 144.125(3) (1991). Consequently, the trial court correctly granted defendant's motion to dismiss plaintiff's petition for a writ of habeas corpus.

Affirmed.