Argued and submitted January 5, affirmed October 31, 2001

RANDOL LAWRENCE PACHL,
*Appellant,*

*v.*

Mitch MORROW,
Superintendent,
Oregon State Correctional Institution,
*Respondent.*

99C11451; A106992

33 P3d 1063

Samuel C. Kauffman argued the cause and filed the briefs for appellant.

Lore Bensel, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff appeals from a judgment that dismissed his petition for a writ of habeas corpus. He contends that he is unlawfully confined in prison as a result of an order of the Board of Parole and Post-Prison Supervision (Board) that deferred his release on parole for two years. The Board based its order on a finding that plaintiff suffered from a present severe emotional disturbance that caused him to be a danger to the health or safety of the community. ORS 144.125(3) (1991). We affirm.

■      Plaintiff is serving a life sentence for murder. A court imposed that sentence in May 1986. Plaintiff had a parole release date of October 21, 1998, on his sentence. In August 1998, the Board entered the order that plaintiff challenges in this proceeding that deferred his release on parole to October 21, 2000. The Board has since entered an order that defers plaintiff's release to October 21, 2002, but that order does not affect plaintiff's ability to pursue his challenge to the validity of the first order. *See Hamel v. Johnson*, 330 Or 180, 187-88, 998 P2d 661 (2000). Plaintiff makes several arguments against the validity of the August 1998 order, which we address in turn.

Plaintiff first contends that the 1985 version of the administrative rule that applied to the Board's decision to defer his release on parole is legally equivalent to the 1988 version of the rule that we applied in *Peek v. Thompson*, 160 Or App 260, 980 P2d 178, *dismissed as moot* 329 Or 553 (1999). If plaintiff were correct, it would mean that the Board could not defer his release unless it received an evaluation of him from a psychiatrist or psychologist that found that he suffered from a present severe emotional disturbance that made him a danger to the health or safety of the community. *See id.* at 264-66. However, the 1985 rule is identical to the 1987 rule that we held in *Burnett v. Lambert*, 173 Or App 577, 581-85, 25 P3d 337 (2001), does not require the Board to receive such an evaluation in order to defer a prisoner's release on parole.[1] We therefore reject plaintiff's contention

---

[1] Both the 1985 and 1987 versions of the rule provided, as relevant:

"(1) At any time prior to a prisoner's scheduled parole release date, the Board may conduct a parole release hearing to review the prisoner's parole

that the Board could defer his release only if it received an evaluation of the type required by the 1988 rule.

Plaintiff next contends that we erred in interpreting ORS 144.125(3) as we did in *Weidner v. Armenakis*, 154 Or App 12, 959 P2d 623 (1998), *withdrawn by order* July 13, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998), and that we should overrule that decision.[2] We reject that contention. In light of our decision in *Hamel v. Johnson*, 173 Or App 448, 456, 25 P3d 314 (2001), on the standard by which we are to evaluate the adequacy of the evidence to support the Board's decision to defer plaintiff's release, we conclude that the record is sufficient to uphold the Board's order.

---

plan, psychiatric/psychological reports, if any, and conduct while in confinement. Pursuant to ORS 144.125, the Board may order any available psychiatric/psychological report(s) from the Corrections Division.

"* * * * *

"(7) If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may order a psychiatric/psychological report to consider the deferral of the scheduled parole release until a specified future date.

"(a) The psychiatric or psychological evaluation shall be conducted to determine if a severe emotional disturbance still exists or is in remission. The evaluation provided may consist of a diagnostic study, including a comprehensive evaluation of the individual's personality, intelligence level, personal and social adjustments, or other pertinent data. The evaluation should include recommendations for treatment or medication that would assist the prisoner in performing satisfactorily in the community upon release."

OAR 255-60-005 (1985 & 1987). In contrast, the 1988 version of the rule provided, as relevant:

"(7) The Board may order a psychiatric/psychological report anytime prior to release. If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may consider deferring parole release until a specified future date.

"(8) If the evaluation does not make a finding of severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board shall affirm the parole release date and set parole conditions."

OAR 255-60-006 (1988).

[2] We held in *Weidner* that the Board could consider all of the evidence in the record to determine whether a prisoner's psychological condition satisfied the standard set by ORS 144.125(3) to defer his release, and that the Board was not limited to considering only whether the psychiatric or psychological evaluation alone met the standard.

■ Finally, plaintiff contends that the Board treated him differently from other prisoners, in violation of Article I, section 20, of the Oregon Constitution,[3] when it deferred his release on parole. He argues that there are no standards or criteria under ORS 144.125(3) (1991) that govern Board decisions to defer the release of prisoners on parole, which means that the Board is free to act arbitrarily in making its deferral decisions. Plaintiff is wrong. The statute itself establishes the criteria that the Board must find to be met in order to defer a prisoner's release on parole. ORS 144.125(3) (1991). Nothing suggests that the Board cannot apply those criteria in a consistent manner, and plaintiff offered no evidence that suggests that the Board uses additional criteria in making its deferral decisions that would lead it to treat similarly situated prisoners differently. *See, e.g., State v. Freeland*, 295 Or 367, 667 P2d 509 (1983).

Plaintiff also argues that the Board, in fact, treated him differently from other, similarly situated prisoners in deferring his release on parole. However, he presented no evidence to support that allegation. Consequently, the court did not err in rejecting plaintiff's contention that he had been denied equal treatment in violation of Article I, section 20.

Affirmed.

---

[3] Article I, section 20, provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."