Argued and submitted May 14, affirmed November 12, 2008

JOHN M. CARTER,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A129301

196 P3d 111

Richard L. Cowan argued the cause for petitioner. With him on the briefs was Rockwell, Cowan & Habekost.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Riggs, Senior Judge.

ORTEGA, J.

## ORTEGA, J.

The Board of Parole and Post-Prison Supervision (board) issued an order postponing petitioner's parole release date after it found that he had a present severe emotional disturbance that constituted a threat to the health or safety of the community. Petitioner seeks judicial review, contending that the order is not supported by substantial evidence in the record, ORS 183.482(8), and does not clearly state the reasons for the board's decision. Because we conclude that the board's order is supported by substantial evidence and that the board is not required to state the reasons for its decision, we affirm.

In 1984, petitioner murdered his ex-wife and the male friend with whom he believed she was having an affair. Following defendant's conviction, he was sentenced to life in prison. The board established a parole release date of February 26, 2004. The board subsequently granted several prison term reductions, resulting in a July 2002 release date. Shortly before that date, the board, pursuant to ORS 144.125(1), scheduled an exit interview to determine whether to defer petitioner's release.[1]

In preparation for the interview, Dr. Carlson conducted a psychological evaluation of petitioner in late 2001. Petitioner's results on one psychological test, the MMPI-2, indicated that he had "a below average need for mental health programming" and did not indicate any socially deviant attitudes. However, his MCMI-III results indicated that he showed "an apprehensive mistrust of others, an edgy defensiveness against criticism" and would "actively resist exploring his motives in therapy, i.e. he will not be a willing candidate for any kind of treatment." Applying DSM-IV criteria, Carlson diagnosed petitioner as suffering from

---

[1] ORS 144.125(1) provides, in part:

"Prior to the scheduled release of any prisoner on parole * * *, [the board] may upon request of the Department of Corrections or on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement."

avoidant personality disorder with negativistic (passive-aggressive) personality traits. Carlson also opined that petitioner lacked insight, seemed unable "to appreciate the severity of his anger and dangerousness or his potential for future violence," and was resistant to treatment, "possibly indicating insufficient skills to cope with future social, vocational, interpersonal and basic living demands." Based on Carlson's evaluation, the board found that petitioner suffered from a present severe emotional disturbance that constituted a danger to the health or safety of the community and deferred petitioner's release date until July 2004. Petitioner did not seek review of that determination.

Before his July 2004 release date, petitioner submitted to two psychological evaluations. Carlson again evaluated petitioner in late 2003; his impressions were generally unchanged. Petitioner's DSM-IV diagnoses remained the same, although Carlson opined that he did not believe that petitioner "suffer[ed] from a present severe emotional disturbance such as to constitute a danger to the community." However, Carlson remained concerned about petitioner's lack of insight. In particular, Carlson noted that petitioner, who was in a dispute with one of his sons over personal property, appeared unable to appreciate the potential for conflict with that son. Carlson expressed concern that, given the similarity between petitioner's disagreement with his ex-wife and that with his son, "the possibility of an incident [could not] be ignored" in the event of petitioner's release. As a result, Carlson recommended that, in the event of his parole, petitioner not be permitted to contact his son.

Petitioner was also evaluated by Dr. Starr, who, using DSM-IV criteria, diagnosed him as suffering from an anxiety disorder with features of unresolved grief and post-traumatic stress. Starr opined that petitioner was not psychopathic but, like Carlson, he was concerned that petitioner showed "very little insight into his own psychological functioning and his motivations." Starr also expressed concern that petitioner was being "somewhat evasive and deceitful" in his recollection of his ex-wife's murder. Starr was also concerned about petitioner's propensity for domestic violence, and believed that he would benefit from specific training before being paroled to address that propensity. Starr conceded that petitioner's risk of violence would be low so long as

he avoided romantic relationships. Nevertheless, Starr cautioned that, if petitioner again engaged in a relationship with a woman, she would be at risk for domestic violence.

At petitioner's exit interview, he told the board that, if he were released, he planned to live with his sister. Petitioner, who was 71 years old at the time of the interview, also disclaimed any intention of entering into a romantic relationship. Petitioner denied that he had a history of domestic violence—yet he acknowledged that he had previously struck his ex-wife, asserting that he had done so on only one occasion. Petitioner denied that his ex-wife had obtained a restraining order against him. On being told that, in the affidavit seeking the restraining order, his ex-wife stated that he had threatened to kill her, petitioner denied ever doing so. However, he was unable to explain why his ex-wife would have lied. Petitioner acknowledged that he had received no psychiatric treatment during his incarceration, explaining that he did not believe that he needed it.

As noted, following the interview, the board again found that petitioner suffered from a present severe emotional disturbance that constituted a threat to the health or safety of the community and deferred his release date for two years. Petitioner seeks review of that determination.

■  We begin with petitioner's contention that the board's order is not supported by substantial evidence. Petitioner contends that nothing in the reports prepared by Carlson and Starr provides a basis for the board's finding that he suffers from a present severe emotional disturbance. In fact, petitioner contends, Carlson's 2003 evaluation detracts from that finding because it states that petitioner did not suffer from a present severe emotional disturbance that presented a danger to the community. The board responds that its order is supported by substantial evidence because petitioner has been diagnosed as suffering from a psychological disorder and a reasonable person could find, based on that diagnosis and other information in the record, that petitioner suffers from a present severe emotional disturbance that makes him a danger to the health or safety of the community.

■■  At the time of petitioner's crimes, ORS 144.125(3) (1983) authorized the board to delay the release of any

inmate whom it determined presently suffers from a severe emotional disturbance that endangers the community:

> "If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the petitioner, the board may order the postponement of the scheduled parole release until a specified future date."

*See Weidner v. Armenakis*, 154 Or App 12, 19-20, 959 P2d 623, *vac'd and rem'd*, 327 Or 317 (1998), *dismissed by order*, July 13, 1998, *reasoning readopted and reaffirmed in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den*, 328 Or 40 (1998) (holding that, under the 1991 version of the statute, which is identical to the 1983 version, the board is responsible for determining whether an inmate's release should be deferred). When exercising its judgment as to whether the inmate's release should be delayed, the board may consider, in conjunction with the inmate's psychiatric or psychological diagnosis, any other pertinent evidence in the record. *Id.* The board's order must be supported by substantial evidence. ORS 144.335(3); ORS 183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

After examining Carlson's and Starr's diagnoses, along with other information in the record, we conclude that the board's order is supported by substantial evidence. Although Carlson and Starr did not agree on petitioner's precise personality disorder, both doctors agreed that petitioner suffered from a disorder, and the record demonstrates that petitioner continues to be affected by it. Both doctors agreed that petitioner lacks insight. Petitioner's 2001 evaluation indicated that he was unable "to appreciate the severity of his anger and dangerousness or his potential for future violence." Two years later, that assessment remained the same: Starr's 2003 evaluation noted that petitioner had "very little insight into his own psychological functioning." In the intervening two years, petitioner had become involved in a financial dispute with his son, and Carlson was concerned that petitioner lacked the capacity to appreciate the potential for

conflict with his son. Although Starr believed that petitioner's risk of violence was low so long as he avoided relationships, Carlson expressed concern that aspects of petitioner's dispute with his son were similar to his disputes with his ex-wife; given petitioner's inability to appreciate those similarities, he recommended that petitioner not be allowed to have contact with his son if released.

Petitioner's exit interview presented additional evidence of his inability to appreciate his potential for future violence. Confronted with evidence that he had physically abused his ex-wife, petitioner repeatedly denied that history and its supporting evidence. Further, the record establishes that petitioner has taken no steps to understand and address his potential for violence. Accordingly, substantial evidence supports the board's finding that petitioner had a present severe emotional disturbance that constituted a threat to the health or safety of the community.

■     In his remaining assignment of error, petitioner contends that the board's order does not clearly state the facts and specific reasons for its decision. However, nothing in the rules applicable at the time of petitioner's 2004 exit interview required the board to explain the reasons for its decision. *See* OAR 255-060-0006(3) (Nov 9, 1998) (following an exit interview, the board must make its decisions pursuant to OAR 255-030-0015); OAR 255-030-0015 (June 9, 2000) (describing procedures for the board's decision).

Affirmed.