Submitted October 4, 2013, petition for judicial review dismissed
March 26, 2014

DOUGLAS RAY MILLER,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A152773

323 P3d 980

Douglas R. Miller filed the briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

## EGAN, J.

Petitioner seeks judicial review of an order of the Board of Parole and Post-Prison Supervision (board) that assigned him a projected parole-release date of March 11, 2012. He contends that the board lacked the authority to recalculate his previously assigned "matrix" prison term and that the board improperly set his projected parole-release date for a time that was approximately six months later than it should have been. For the following reasons, we dismiss the petition.

Petitioner was tried and convicted of aggravated murder. In September 1982, he was sentenced to a minimum of 30 years in prison without the possibility of parole pursuant to ORS 163.105(1) (1981), which prescribed that sentence for certain types of aggravated murder. Shortly after petitioner's sentence began to run, the board issued a board action form (BAF) providing that petitioner's matrix range was 120 to 168 months.[1] In 1988, the board set a parole-release date for petitioner of February 1, 2012. In 1990, the board rescinded that release date, explaining that it did not have the authority to set parole-release dates for prisoners serving aggravated-murder sentences unless the prisoner had been found likely to be rehabilitated within a reasonable period of time. At the time of petitioner's sentencing, a prisoner serving time for aggravated murder—as defined in ORS 163.095(1)—could, after 20 years of incarceration, petition the board to find that the prisoner was "likely to be rehabilitated within a reasonable period of time." ORS 163.105(3) (1981). If the board made such a finding, ORS 163.105(4) (1981) directed the board to "convert the terms of the prisoner's confinement" to life in prison with the possibility of parole.

In 2008, the board found that petitioner was likely to be rehabilitated within a reasonable time. Accordingly, the board converted petitioner's sentence to life in prison with

---

[1] From 1977 until the adoption of Oregon's sentencing guidelines in 1989, the board determined the duration of an inmate's imprisonment through the application of a "matrix" that considered the severity of the offense and the offender's prior criminal history. *See Hamel v. Johnson*, 330 Or 180, 185-86, 998 P2d 661 (2000) (explaining the matrix system).

the possibility of parole. As to a projected release date, the board apparently took the position that it could not parole a prisoner serving an aggravated murder sentence before that prisoner had served the 30-year minimum prescribed by ORS 163.105(1) (1981), regardless of a board finding that the prisoner was likely to be rehabilitated. Accordingly, the board set a "projected parole release date" of March 11, 2012, the date that also marked the end of petitioner's 30-year minimum sentence.

In 2010, the Oregon Supreme Court addressed the issue of parole in the context of an aggravated-murder sentence in *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010). In that case, the board argued that it lacked the authority to grant parole to a prisoner incarcerated for aggravated murder before the 30-year minimum term announced by ORS 163.105(1) (1985) had run. The court concluded otherwise, stating that ORS 163.105 (1985) "gave the board the authority to override the 30-year mandatory minimum sentence for aggravated murder, and to consider releasing a prisoner on parole after 20 years, upon a finding that the prisoner is likely to be rehabilitated within a reasonable time." *Janowski*, 349 Or at 446.

Several months after *Janowski* was announced, the board informed petitioner—then in his 29th year of confinement—that it would hold a hearing for the purpose of determining petitioner's "prison term under the matrix system." That hearing took place in July 2011. At that hearing, the board told petitioner that it would calculate petitioner's matrix score according to the laws in effect at the time of his crime. The board then determined that petitioner's matrix term was 276 months, a term that was 108 months longer than the high end of the matrix range that the board had assigned petitioner in 1982. That disparity arose because the board applied aggravating factors that it had not applied in 1982. Under either calculation, petitioner's matrix prison term had expired at the time of the July 2011 hearing.

Following the July 2011 hearing, the board issued a BAF that adhered to the March 11, 2012, parole-release date, which, again, had been in place since 2008. The board stated that it had "selected that date in order to allow time

for scheduling an exit interview, which we expect to be held on 9/21/2011, with a current psychological evaluation as authorized by ORS 144.223." Petitioner filed a request for administrative review of that BAF, contending, among other things, that the board had erred both by overriding his 1982 matrix range at the 2011 hearing and by adhering to the March 11, 2012, parole-release date that had been in place since 2008. The board denied relief by order, and this timely petition for judicial review followed.

After petitioner filed the petition for judicial review, the board moved for summary affirmance, contending that the petition did not present a substantial question of law; the Appellate Commissioner denied that motion, and the board moved for reconsideration of that denial. In its motion for reconsideration, the board also moved to dismiss the petition as moot. The board did so because, at a September 2011 release hearing, the board had postponed petitioner's March 11, 2012, release date to March 11, 2014.[2] In response, petitioner confirmed that the board had postponed the March 2012 release date under ORS 144.125(3) (1981), which provides that the board may postpone a release date upon finding that a "psychiatric or psychological diagnosis reveals a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." Nonetheless, petitioner contended that the petition was not moot. On that point, he argued that, because his matrix term had expired, the board should have set his release date for a point immediately after the September 2011 release hearing rather than adhere to the March 2012 release date, *i.e.*, approximately six months earlier. Petitioner asserted that the putative error in setting the March 2012 release date would carry forward to each of his subsequently assigned release dates—resulting in an eventual release that is six months later than it should be—and that his petition was thus not moot. The Chief Judge denied the motion for reconsideration and the motion to dismiss.

Petitioner contends that the board order was in error because it both (1) calculated a new matrix term for

---

[2] Petitioner does not assign error to the scheduling of the September 2011 release hearing.

petitioner and (2) reassigned the March 11, 2012, release date that the board first imposed in 2008. He cites *Janowski*, along with various statutes and administrative rules, for the proposition that the board lacked the authority to do either of those things.

We begin by concluding that we cannot address petitioner's contention regarding the recalculation of his matrix term. "A court's decision on a matter must have some practical effect on the rights of the parties to the controversy." *Hamel v. Johnson*, 330 Or 180, 184, 998 P2d 661 (2000). "Appellate courts are prohibited from deciding abstract, hypothetical, or contingent questions." *Id.* Regardless of which matrix calculation applied—the 1982 matrix range or the 2011 matrix term—petitioner's prison term under the matrix had passed by the time of the July 2011 hearing. As we explain in more detail below, a petitioner with an expired matrix term is not entitled to an immediate release from prison; instead, the board is entitled to hold a release hearing at some point before the scheduled release date, whenever that date happens to be. *See Janowski*, 349 Or at 458-59. Petitioner does not challenge the scheduling of the 2011 release hearing. Thus, even if we were to conclude that petitioner is correct that the board lacked the authority to recalculate petitioner's original matrix score at the 2011 hearing, that conclusion would have no "practical effect on the rights of the parties," for the board was entitled, in any event, to both conduct the release hearing and to postpone petitioner's release date upon making certain findings pursuant to that hearing. Accordingly, we do not address whether the board could—or did—appropriately adjust petitioner's matrix calculation at the 2011 hearing.[3] *Accord Rivas v. Persson*, 256 Or App 829, 836-37, 304 P3d 765 (2013) ("[O]nce the matrix release date has passed, credit for time served no longer has any bearing on when the inmate will be released. Instead, that ultimate release date is determined exclusively through the parole consideration process.").

---

[3] We note that petitioner contends only that his challenge is not moot because, if successful, it could potentially result in his being released on parole sooner than he otherwise would be. He does not argue that there are other collateral consequences that might render our review moot. *See State v. Hauskins*, 251 Or App 34, 36, 281 P3d 669 (2012) ("It is the defendant's burden to show a collateral consequence, and we will not assume one.").

We next turn to petitioner's contention that the board erred by adhering to the March 11, 2012, parole-release date instead of assigning a parole-release date that was approximately six months earlier, that is, a release date that immediately followed the September 2011 release hearing. We begin by outlining some of the pertinent laws. ORS 145.125 (1981) provides:

"(1) Prior to the scheduled release of any prisoner on parole or on temporary leave in accordance with ORS 421.165(2)(b) [(1981)] and prior to release rescheduled under this section, the board may upon request of the Corrections Division or on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement. * * *

"(2) The board shall postpone a prisoner's scheduled release date if it finds, after a hearing, that the prisoner engaged in serious misconduct during confinement. * * *

"(3) If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date.

"(4) Each prisoner shall furnish the board with a parole plan prior to the scheduled release of the prisoner on parole. The board shall adopt rules specifying the elements of an adequate parole plan and may defer release of the prisoner for not more than three months if it finds that the parole plan is inadequate."

Aside from the circumstances listed in ORS 144.125(2), (3), and (4) (1981)—and those in ORS 144.110(2) (1981), pertaining to a prisoner's unexpired minimum term (not applicable here)—the "parole and matrix statutes provide[] the board with no authority to continue to imprison an inmate after the expiration of the parole matrix range." *Janowski*, 349 Or at 458.

As *Janowski* stated, however, the board has the authority to hold a release hearing before the release date. In that case, Janowski's matrix term had expired by the time that the Supreme Court determined that he was eligible for

parole consideration. As such, Janowski argued that he was entitled to immediate release on parole. Despite the rule that the board lacks authority to imprison an inmate past the expiration of the inmate's matrix range, the court concluded that ORS 144.125(1) (1985)[4] permitted the board to hold an exit hearing before the "scheduled release of any prisoner." Accordingly, the court rejected Janowski's argument that he was entitled to immediate release; instead, the court stated that "the board must now conduct a hearing, using whatever procedures it deems appropriate, to set each prisoner's release date according to the matrix in effect when he committed his crime. Because the matrix range in Janowski's case already has expired, we anticipate that the release date in his case will be set in the near future." 349 Or App at 456. The court further directed,

> "Once the board sets Janowski's release date, it will have an opportunity to interview him to determine whether any of the grounds for postponement of his release are present. However, if, after conducting such an interview, the board concludes that none of the statutory grounds for postponement is present, the board must release Janowski on parole on his release date."

*Id.* at 459 (footnote omitted). Thus, the board is entitled to conduct a release hearing before an inmate's parole release date, and to postpone the release date upon finding that any of the three conditions in ORS 144.125(2), (3), or (4) (1981) obtain.

With that background, we return to petitioner's challenges to the March 11, 2012, release date. As noted, after the September 2011 release hearing the board denied petitioner parole under ORS 144.125(3) (psychiatric or psychological diagnosis of severe emotional disturbance), and postponed his release date until March 11, 2014. Despite the facts that the March 2012 release date has now passed (as has the subsequently assigned March 2014 date)[5] and that

---

[4] ORS 144.125 (1985) is identical to ORS 144.125 (1981).

[5] Neither party has informed us of facts pertaining to the March 2014 release date that render this appeal moot. *See* ORAP 8.45 ("[W]hen a party becomes aware of facts that probably render an appeal moot, that party shall provide notice of the facts to the court and to the other party or parties to the appeal, and may file a motion to dismiss the appeal." (Footnote omitted.)).

the board found, in September 2011, that petitioner was ineligible for release on that date, petitioner contends that any subsequent postponements of his release date will have the original six-month error built in, that is, his parole release date will, in the future, be postponed to a date that is six months later than it would be in the absence of error in the 2011 board order. That contention is apparently premised on OAR 255-062-0011(2), which addresses how long the board may defer a projected parole release date for a prisoner in petitioner's circumstances, that is, a prisoner who committed crimes between 1977 and 1989 and whose parole-release date is deferred pursuant to ORS 144.125(3):

> "(2) *Exit Interview Hearing*: *Crime Commitment Date prior to 11/01/1989—but on or after 10/4/1977*: If the State Board of Parole and Post-Prison Supervision concludes, applying ORS 144.125(3), that an inmate suffers from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board may not defer the projected parole release date for less than two years, or more than 10 years, from the date of inmate's current projected parole release date."

OAR 255-062-0011(2) (italics in original).

After further consideration of the matter, we now conclude that the board's subsequent decision to postpone petitioner's parole-release date pursuant to ORS 144.125(3) (1981) renders his challenge to the board's adherence to the March 2012 release date moot. Even assuming the applicability of OAR 255-062-0011(2),[6] the board was entitled at the September 2011 release hearing, upon properly finding a "psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community," to postpone petitioner's March 2012 release date for between two and 10 years, that is, to a date between March 2014 and March 2022. If petitioner's release date had instead been scheduled for September 2011, as he contends that it should

---

[6] Our review of the administrative regulations in effect at the time that petitioner was sentenced in September 1982 reveals no restraints on the length of time that the board may postpone a release date under ORS 144.125(3) (1981). The statute itself broadly provides that "the board may order postponement of the scheduled parole release until a specified future date."

have been, the board would have been entitled—at the September 2011 release hearing and upon making the requisite finding under ORS 144.125(3) (1981)—to postpone petitioner's release date to a date between September 2013 and September 2021. As it happens, the board postponed petitioner's release date until March 11, 2014, a date that is common to both of those ranges. Assuming, then, that the board's September 2011 decision to postpone was valid—a matter that is not at issue here[7]—the board was entitled under OAR 255-062-0011(2) to postpone petitioner's release date to March 11, 2014, regardless of whether petitioner is correct that the board initially erred in setting his release date for March 11, 2012. *See Hamel*, 330 Or at 187 ("Any one of the statutory reasons for postponing a release date, if valid, suffices to postpone a scheduled parole release date."); *Carter v. Board of Parole*, 223 Or App 745, 750, 196 P3d 111 (2008) (stating that the board's order delaying a prisoner's release "must be supported by substantial evidence").

The Supreme Court's decision in *Hamel* helps illuminate our conclusion. There, we had dismissed as moot a prisoner's habeas corpus challenge to a January 1997 board order that deferred his parole-release date under ORS 144.125(3). *Hamel v. Johnson*, 158 Or App 276, 281, 974 P2d 260 (1999), *rev'd*, 330 Or 180 (2000). The petitioner alleged that the board's order violated state and federal constitutional prohibitions against *ex post facto* laws. The trial court rejected the petitioner's arguments and he appealed to this court; during the pendency of that appeal, the board issued a new order in 1998 that postponed the release date that we were then considering. We agreed with the respondent that the 1998 board order superseded the 1997 order and dismissed the petitioner's appeal as moot. *Id.* The Supreme Court held that our dismissal was in error, explaining that, "if [the] petitioner were to prevail on his claim that the Board's reason for postponing his release date under ORS 144.125(3) was not valid, then the Board should have released him on parole on May 29, 1997, and his continued imprisonment is unlawful." *Hamel*, 330 Or at 188. That is,

---

[7] In a separate judicial review proceeding, *Miller v. Board of Parole and Post-Prison Supervision*, (A153106), petitioner has challenged the board's September 2011 decision to postpone his release date.

the appeal was not moot because, if the petitioner was correct that the board's 1997 postponement decision was erroneous he would have been entitled to be released ahead of the 1998 hearing.

Petitioner's circumstances here differ in a crucial respect, because petitioner is not contending that the board was required to actually *release* him on his previously assigned release date. Instead, he is only challenging the *scheduling* of the March 11, 2012, release date on the premise that it will affect the scheduling of future release dates; however, as we have explained, that release date has passed, and the board set a new release date that it could have selected without regard to the correctness of petitioner's argument that the March 2012 release date should have been a September 2011 release date. As we stated in *Rivas*, a case involving a prisoner who sought to challenge an assigned release date that had already passed, "ordering the board to start the [release] process again would have no practical effect on [petitioner's] rights." 256 Or App at 837. "Cases *** in which a court's decision no longer will have a practical effect on or concerning the rights of the parties, will be dismissed as moot." *Brummett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993).

Petition for judicial review dismissed.