Submitted August 2, 2013, petition for judicial review dismissed as moot December 24, 2014

### TYRONE EARL WALTON,
*Petitioner,*

*v.*

### BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A151274

341 P3d 828

Tyrone E. Walton filed the brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

Petitioner, who is serving consecutive life sentences for aggravated murder, seeks review of an order of the Board of Parole and Post-Prison Supervision (the board), contending that the board committed a variety of procedural errors and erred in concluding that he was not eligible for a "murder review" hearing under ORS 163.105 (1985) in 2009 but could petition for such a hearing in 2011. We need not resolve the merits of petitioner's contentions because, as we will explain, this judicial review proceeding is moot. Accordingly, we dismiss petitioner's petition for judicial review.

In 1988, petitioner was convicted of two counts of aggravated murder, felony murder, and robbery that were predicated on conduct that occurred in 1987 in Multnomah County. He was sentenced to death. The Oregon Supreme Court affirmed petitioner's convictions but vacated the death sentence and remanded for resentencing. *State v. Walton*, 311 Or 223, 809 P2d 81 (1991). Thereafter, in 1993, the trial court, on remand, sentenced petitioner to consecutive life sentences on two counts of aggravated murder and merged the felony murder conviction into one of the aggravated murder convictions. On appeal, we agreed with petitioner that the trial court had erred in failing to merge the robbery conviction with one of the aggravated murder convictions. *State v. Walton*, 134 Or App 66, 894 P2d 1212, *rev den*, 321 Or 429 (1995).[1]

In 2007, petitioner petitioned the board for a murder review hearing pursuant to ORS 163.105(2) (1985). That statute provided:

> "At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time."

The board scheduled a murder review hearing in 2009, indicating that the issue before it would be whether

---

[1] Petitioner did not timely seek appellate review after his subsequent resentencing, but later sought, and was denied, post-conviction relief. *Walton v. Thompson*, 196 Or App 335, 102 P3d 687 (2004), *rev den*, 338 Or 375 (2005).

petitioner was likely to be rehabilitated within a reasonable period of time. At that hearing, a deputy district attorney from Multnomah County suggested to the board that petitioner was not, in fact, entitled to a murder review hearing at that time, because 20 years had not yet passed from "the date of imposition of a minimum period of confinement." ORS 163.105(1) (1985). Specifically, the deputy district attorney asserted, among other things, that the operative date for purposes of ORS 163.105(1) (1985) was the date on which petitioner was resentenced in 1993, rather than the date on which petitioner was originally sentenced to death in 1988. The board ultimately agreed with the deputy district attorney's argument, concluding that petitioner was "not entitled to petition for a murder review hearing until twenty years after he was sentenced to life imprisonment."

On review, petitioner takes issue with the board's decision, raising both procedural issues (concerning the adequacy of the notice of the hearing and the propriety of the deputy district attorney's role in the proceeding) and a substantive issue concerning the board's legal conclusion that the 20-year timeline did not "relate back" to his original sentencing but, instead, ran from his 1993 resentencing. The board moved to dismiss the petition for judicial review as moot, noting that petitioner had subsequently received a murder review hearing in March 2012, at which the board had determined that petitioner had not met his burden to establish that he was likely to be rehabilitated within a reasonable period of time.[2] The Appellate Commissioner denied the state's motion to dismiss, reasoning, in part, that

> "the date on which a person convicted of murder is determined to be capable of being rehabilitated affects the person's initial parole release date and therefore the date on which the person may be released on parole. Thus, the outcome of this judicial review could result in an earlier parole

---

[2] Somewhat bizarrely, the March 2012 murder review hearing was held before the board issued its final decision that is the subject of this judicial review proceeding. Although the initial hearing occurred in December 2009, the board's decision, which was embodied in Board Action Form (BAF) 9, was not mailed to petitioner until April 19, 2011. Petitioner then timely sought administrative review of BAF 9. In April 2012, the board completed its administrative review of BAF 9 and issued Administrative Review Response 2. Thereafter, petitioner timely sought judicial review.

release date than otherwise would be obtained if this judicial review were dismissed."

Although the board does not renew its contention that this judicial review proceeding is moot, we have an independent obligation to consider matters concerning jurisdiction *sua sponte. Hood River County v. Stevenson*, 177 Or App 78, 81, 33 P3d 325 (2001). Mootness is a jurisdictional concern, *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993), and a proceeding is moot if the court's exercise of authority would no longer have "a practical effect on the rights of the parties" to the controversy. *Association of Oregon Corrections Employees v. DOC*, 266 Or App 496, 503, 337 P3d 998 (2014) (citations omitted).

After the commissioner denied the board's motion to dismiss, we issued our decision in *Miller v. Board of Parole*, 261 Or App 795, 323 P3d 980 (2014). As explained below, we conclude that, under *Miller* and the Supreme Court's decisions in *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010), and *Severy/Wilson v. Board of Parole*, 349 Or 461, 245 P3d 119 (2010), even if we were to agree with petitioner's contentions on judicial review, any decision in this case would have no practical effect on the rights of the parties. Accordingly, and consistently with our *sua sponte* obligation, we dismiss this judicial review as moot.

Because the construction and application of the murder review statutes in *Janowski/Fleming, Severy/Wilson*, and, ultimately, *Miller* is integral to our jurisdictional analysis, we recount those cases in detail.

As noted above, ORS 163.105(2) (1985) permits an inmate who has been sentenced to life imprisonment for aggravated murder to petition, after serving 20 years, for a hearing. At that hearing, the board makes a determination whether the inmate is likely to be rehabilitated within a reasonable period of time. Under ORS 163.105(3) (1985), if the board determines that the inmate is likely to be rehabilitated within a reasonable period of time, "it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release."

In *Janowski/Fleming*, the Supreme Court addressed the operation of ORS 163.105 (1985). There, the issue was whether a finding of rehabilitation after 20 years, but before the 30-year minimum specified in ORS 163.105(1) (1985) had been served, meant that an inmate serving a life sentence pursuant to those provisions could become eligible for release in less than 30 years. The Supreme Court, interpreting the word "convert" as used in subsection (3), concluded that an order converting the terms of imprisonment "necessarily eliminates the 30-year mandatory minimum sentence." 349 Or at 442. The court then turned to the question of what occurs after the board has entered an order that eliminates the 30-year mandatory minimum and concluded that "the legislature intended that the board employ the matrix system to set release dates for those prisoners whom it has unanimously determined are capable of rehabilitation." *Id.* at 446. In sum, the result of a successful murder review hearing at which an inmate establishes that he or she is likely to be rehabilitated within a reasonable period of time is not that the inmate is paroled at that point—rather, the board then uses the matrix system to determine the term of incarceration after which the inmate will be eligible for parole.

The Supreme Court then went on to address an additional argument by petitioner Janowski. Janowski contended that, because the "matrix range" for his offense necessarily would have expired before the board made its murder review rehabilitation finding, he was entitled to immediate release. *Id.* at 459. The court disagreed:

"Janowski's argument misreads the statute and fails to take into account that the board has not yet set his parole release date; rather, the board must conduct a hearing in the immediate future to do so. And, in any event, ORS 144.125(1) (1985) provides that, *'prior to the scheduled release of any prisoner,'* the board may interview the prisoner to determine if any of the statutory grounds for postponement of a parole release date are present. The phrase 'scheduled release' is not defined in the statute or in the applicable regulations. However, the plain and natural meaning of that phrase is the date that the board ultimately schedules for the prisoner's release. Again, in this case, Janowski still is

incarcerated; the board has not yet scheduled his release. Once the board sets Janowski's release date, it will have an opportunity to interview him to determine whether any of the grounds for postponement of his release are present. However, if, after conducting such an interview, the board concludes that none of the statutory grounds for postponement is present, the board must release Janowski on parole on his release date."

*Id.* (footnotes omitted; emphasis in original).

In sum, as explained in *Janowski/Fleming*, before the board paroles an inmate subject to ORS 163.105 (1985), it must employ a three-step process, involving successive, contingent determinations. First, at a murder review hearing, the board must determine that the inmate is "likely to be rehabilitated within a reasonable period of time." ORS 163.105(2) (1985). Second, if the board makes that determination, it must apply the matrix to determine the incarceration term that must be served before the inmate is eligible for parole—that is, the board must set the inmate's parole release date. Third, before that scheduled date, the board, pursuant to ORS 144.125(1) (1985) must determine whether statutory grounds for postponement of the inmate's release are present.

On the same day that the Supreme Court issued its decision in *Janowski/Fleming*, it also decided *Severy/Wilson*. That case involved the operation of ORS 163.105 (1985) with respect to inmates—like petitioner in this case— serving consecutive life sentences for aggravated murder. The Supreme Court explained that, before the board paroles such an inmate, it must employ essentially the same three-step process that it described in *Janowski/Fleming*.

More particularly, in *Severy/Wilson*, the Supreme Court reasoned that a rehabilitation finding made at a murder review hearing is applicable to *both* sentences (abrogating its earlier decision in *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000)). *Severy/Wilson*, 349 Or at 476-77; *see also id.* at 477 ("We hold that, in requiring the board to convert the 'terms of the prisoner's confinement' to life with the possibility of parole, ORS 163.105(3) (1985) required the board to convert the prohibition on eligibility for parole

(for both consecutive sentences for aggravated murder) to the possibility of parole."). Ultimately, the Supreme Court remanded the case to the board, reasoning:

"[T]he board did not have occasion to consider whether each prisoner would still have to serve a reduced mandatory minimum sentence of 20 years for the second offense or whether the effect of its finding that each prisoner is capable of rehabilitation meant that the matrix applied immediately. Beyond that, the board did not have occasion to consider, if the matrix applies immediately, how the second mandatory minimum should be factored, if at all, into the matrix determination. Perhaps we could resolve some of those issues in advance of the board's resolution of them. But we think that the more prudent course is to remand these consolidated cases to the board so that it may address those questions in the first instance. The board's orders resolving those issues may limit, clarify, or sharpen the issues for any further review."

*Severy/Wilson*, 349 Or at 478.

Thus, under *Severy/Wilson*, before the board paroles an inmate (like the present petitioner) serving consecutive life sentences for aggravated murder, it must employ the following three-step process. First, at a murder review hearing, the board must determine that the inmate is "likely to be rehabilitated within a reasonable period of time." ORS 163.105(2) (1985). Second, if the board makes that determination, it must then determine "how the second mandatory minimum should be factored, if at all, into the matrix determination" immediately so as to allow the board to set the inmate's parole release date. *Id.* Third, before that scheduled date, the board, pursuant to ORS 144.125(1) (1981), must determine whether statutory grounds for postponement of the inmate's release are present.

Against that backdrop, we decided *Miller*. In *Miller*, the board had determined that the petitioner—who was serving a life sentence for aggravated murder under an earlier version of the law that was substantially similar to the one discussed in *Janowski/Fleming*—was likely to be rehabilitated within a reasonable period of time. In the wake of *Janowski/Fleming*, the parties disagreed as to how the matrix applied in setting the petitioner's release date. The

petitioner contended that his matrix term had expired after 168 months of imprisonment, and the board contended that the matrix term had expired after 276 months of imprisonment. *Miller*, 261 Or App at 796-97. Regardless of which calculation was correct, though, by the time the board entered its order concerning the applicability of the matrix to the petitioner's sentence, he had already served more than 276 months' imprisonment. *Id.* at 797. While the petitioner challenged that board order on judicial review, the board meanwhile moved on to the third step described above, 267 Or App at 678, and entered a new order, pursuant to ORS 144.125(3) (1981), finding that statutory grounds for postponement of the scheduled release date were present. *Miller*, 261 Or App at 798.

The board moved to dismiss the petitioner's petition for judicial review of the order concerning the matrix determination as moot, in light of the subsequent postponement of the petitioner's release pursuant to ORS 144.125(3) (1981). We agreed, concluding that, under the circumstances presented, a determination of which matrix term was the correct one would have had no practical effect on the rights of the parties, given that, under *Janowski/Fleming*, regardless of when the matrix term expired, "a petitioner with an expired matrix term is not entitled to an immediate release from prison; instead, the board is entitled to hold a release hearing." *Miller*, 261 Or App at 799. *Compare Hamel v. Johnson*, 330 Or 180, 998 P2d 661 (2000) (inmate's claim was not moot where, were he to prevail on his claim that the board's postponement of his release date was not valid, he would have been entitled to immediate parole).

The present case is fundamentally similar to *Miller*—and unlike *Hamel*. To summarize, the board concluded (erroneously, according to petitioner) that he was not eligible for a murder review hearing under ORS 163.105 (1985) in 2009 but could petition for such a hearing in 2011. Meanwhile, before petitioner's challenge to the board's resulting order was underway in this court, the board had held a murder review hearing in 2012 in which it considered the matter that petitioner believes it should first have considered in 2009—that is, whether petitioner is likely to be rehabilitated within a reasonable period of time.

Given that posture, and keeping in mind the three-step process outlined in *Janowski/Fleming* and *Severy/Wilson*—of which the murder review proceeding is merely the first step—any consideration of petitioner's challenges on review would yield no practical effect. That is so because, even if we were to agree with petitioner that the board should have held the murder review hearing in 2009 and even if the board had made a determination at that time that petitioner was likely to be rehabilitated, that by itself could not and would not have affected his release date, which is ultimately dependent on the outcome of the second and third contingent steps outlined in *Janowski/Fleming* and *Severy/Wilson*. That is, while the first step is a prerequisite for the successive, contingent determinations, it does not affect their outcome. Specifically, a determination at the second step of the matrix range (and, pursuant to *Severy/Wilson*, the proper prison term for the consecutive sentence as well) is not dependent upon when a murder review hearing is first held—or even on the date on which the board concludes that an inmate is likely to be rehabilitated.[3]

In sum, the success or failure of petitioner's legal arguments in the present proceeding would have no practical effect on his parole release date.

Petition for judicial review dismissed as moot.

---

[3] Although this case differs from *Miller* in that the petitioner in *Miller* involved the second stage of the process described in *Janowski/Fleming*, and this case involves the first stage, the reasoning applies with equal force to either of these preliminary stages of the process.