Submitted March 28, petition for judicial review dismissed August 31, 2016, petition for review denied February 2, 2017 (360 Or 851)

DAVID LEE ATKINSON,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A152750

382 P3d 567

Peter Gartlan, Chief Defender, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for petitioner. Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, filed the reply brief for petitioner. David Lee Atkinson filed the supplemental brief *pro se.*

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

### ARMSTRONG, P. J.

Petitioner, who was convicted in 1985 of aggravated murder and other crimes, seeks judicial review of an order of the Board of Parole and Post Prison Supervision that set his matrix range at 228 to 288 months and established a projected parole release date of June 28, 2013. He contends that the board erred in holding a "second prison term hearing" and in imposing "a different matrix range and prison term than it did after the first prison term hearing based on the same information." He further contends that the use of a three-member board to decide those issues violated the *ex post facto* protections of the state and federal constitutions.[1] The board responds that the case is moot[2] and, in any event, that it did not err in the manner asserted by petitioner. Because we agree with the board that the issues raised by petitioner are moot, we dismiss the petition and do not reach the merits of petitioner's arguments.

We begin with a brief overview of the case for context; additional factual details, pertinent to the question of mootness, are provided in our analysis of that issue.

Petitioner was convicted in 1985 of aggravated murder, robbery in the first degree, and felon in possession of a firearm, which the board later identified as petitioner's "group 1" crimes.[3] For the aggravated murder conviction, he received a life sentence under ORS 163.105(2) (1983) with a mandatory minimum of 20 years' imprisonment. On July 3, 1985, the board held a prison-term hearing and, as reflected

---

[1] In a *pro se* supplemental brief, petitioner purports to raise two additional assignments of error. Specifically, he contends that (1) "[a] single member of the board did not have subject matter jurisdiction to conduct an 'administrative file pass' and change petitioner's 'parole release date,'" referring to Board Action Form #4, and (2) "[p]etitioner's parole release date for both group #1 and [g]roup #2 offenses has expired." Petitioner failed to exhaust his administrative remedies with respect to the first assignment; the second does not assign error to any ruling of the board.

[2] The board moved to dismiss petitioner's petition for judicial review as moot while briefing was ongoing. The Appellate Commissioner initially granted the board's motion, but, on reconsideration, vacated the earlier order of dismissal, giving the board leave to renew its mootness argument in its answering brief, which the board did.

[3] We later vacated petitioner's robbery conviction, holding that it should have merged with his aggravated felony murder conviction. *State v. Atkinson*, 80 Or App 54, 60-61, 722 P2d 9 (en banc), *rev den*, 302 Or 36 (1986).

in its Board Action Form (BAF) of that date, set petitioner's matrix range at 258 to 328 months and his prison term at 264 months. The BAF also established a "release date of 6/28/2006."[4] Petitioner was subsequently convicted of additional crimes while incarcerated; the board refers to those crimes as petitioner's "group 2" crimes.

In 2008, the board found that petitioner had met his burden of proving that he was likely to be rehabilitated within a reasonable period of time and, under ORS 163.105(4) (1983),[5] converted petitioner's aggravated murder sentence to life with the possibility of parole.[6] Then, on September 7, 2011, after the Supreme Court decided *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010),[7] the board held another prison-term hearing for petitioner and determined, in BAF #15, that his matrix range was 228 to 288 months. The board found as an aggravating factor "[r]epetition of behavior pattern which contributes to criminal conduct, return to drug abuse," and set petitioner's prison term at the top of the matrix—that is, 288 months in prison. The board also noted that petitioner "has a consecutive 60 month prison term to serve on the group #2 offenses, which will begin on 06/28/2008." The board set

---

[4] For readability, when quoting the text of BAFs in this opinion, we omit the "all caps" format used in those documents.

[5] ORS 163.105(4) (1983) provided:

"If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise, the board shall deny the relief sought in the petition."

[6] Previously, in 1999, 2003, and 2005, the board had held murder-review hearings and determined that petitioner had failed to meet his burden to prove that he was likely to be rehabilitated within a reasonable period of time.

[7] In *Janowski/Fleming*, the Supreme Court held that ORS 163.105 (1985) authorized the board to "override the 30-year mandatory minimum sentence for aggravated murder, and to consider releasing a prisoner on parole after 20 years, upon a finding that the prisoner is likely to be rehabilitated within a reasonable time." 349 Or at 446. It also held that the board's parole matrix rules governed the board's release decisions for those prisoners whom it determined were capable of rehabilitation, *id.*; accordingly, and because there was "no set release date in place" for either of the prisoners in that case, the board was required to conduct a hearing to "set each prisoner's release date according to the matrix in effect when he committed his crime." *Id.* at 456.

a projected parole-release date of June 28, 2013, "following a total of 348 months (this includes the prison term on the group #1 and #2 offenses)." That order is the subject of petitioner's challenge in the present case.

As he did before the board, petitioner on review contends that the board erred in holding a second prison-term hearing, imposing a different matrix range and prison term than it did at the initial prison-term hearing, and making those determinations with a three-person board.[8]

The board contends that petitioner's challenge is moot because, even if the board erred in holding the 2011 "*Janowski/Fleming* hearing" and setting a new prison term and parole-release date for petitioner, a decision on those issues would have no practical effect on petitioner's rights. *See Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993) (court will dismiss appeal as moot where there is no longer a controversy and a decision from the court would, thus, "no longer * * * have a practical effect on or concerning the rights of the parties"). The board points out that, in 2012, and again in 2014, the board held exit interviews for petitioner and, in each instance, found that petitioner suffered from a present severe emotional disturbance that constituted a danger to the health or safety of the community and, therefore, deferred petitioner's parole-release date for two years. *See* ORS 144.125(1) (1983) (providing for an interview "[p]rior to the scheduled release of any prisoner on parole"); ORS 144.125(3) (1983) (allowing board to postpone a scheduled release date "[i]f a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner"). Thus, the board asserts, "even if the board 'reinstated' the original prison term, petitioner has already received the only relief to which he would be entitled at the expiration of that term, *i.e.*, an exit interview." In the board's view, the issue is controlled by our decisions in *Rivas v. Persson*, 256 Or App 829, 304 P3d 765 (2013), and *Miller v. Board of Parole*, 261 Or App 795, 323 P3d 980 (2014). Accordingly, we begin there.

---

[8] Petitioner sought administrative review of the board's ruling, and the board denied relief.

In *Rivas*, the plaintiff, who was serving a sentence for aggravated murder for which he was arrested in 1987, appealed the denial of his petition for a writ of habeas corpus. The plaintiff sought the writ in 2011 on the ground that the board had not fully credited him for time served following his arrest, as was provided in the 1992 plea agreement leading to his conviction and sentence for aggravated murder. 256 Or App at 830-31.

Meanwhile, in 2010, the board had found that the plaintiff was likely to be rehabilitated within a reasonable period of time and converted his sentence—life without the possibility of parole for a minimum of 30 years—to life with the possibility of parole. *Id.* at 831. The board set a prison term according to the sentencing matrix in effect when the plaintiff committed his crime and established a projected parole-release date of June 3, 2012. *Id.* If the board had credited the plaintiff with all of the days that he had been incarcerated between his arrest and conviction, the projected release date would have been approximately October 8, 2010. *Id.*

The defendant moved to dismiss the plaintiff's appeal as moot, arguing that, even if the plaintiff were correct as to the calculation of his credit for time served, the most to which he was entitled if he prevailed on judicial review on that point was a remand requiring the board to hold an exit interview, which had already been held and at which the board had postponed his projected release date by two years based on its finding that the plaintiff had a present severe emotional disturbance constituting a danger to the health or safety of the community. *Id.* at 833. In response, the plaintiff, citing *Hamel v. Johnson*, 330 Or 180, 998 P2d 661 (2000), argued that the case was not moot, because the board had authority to postpone his release date only if it had held the exit interview *before* the date that he alleged he was entitled to release. In the plaintiff's view, it was "irrelevant that the board held an exit interview and decided to postpone his release date *after* the date on which he alleges he was entitled to be released." 256 Or App at 833-34 (emphasis added).

We agreed with the defendant that the appeal was moot, concluding that *Janowski/Fleming*, rather than *Hamel*,

governed. In *Janowski/Fleming*, the applicable matrix range for one of the inmates—Janowski—had already expired, and he argued that, as a result, he was entitled to immediate release because the court had authority to postpone his release only at an exit interview held *before the expiration of the matrix range*. 349 Or at 456, 459. The Supreme Court disagreed, concluding that, under ORS 144.125(1) (1985), because the board had not yet scheduled a *release date* for Janowski, the board could, after setting that date, hold an exit interview to determine whether any of the grounds for postponement were present. *Id.* at 459.

We concluded in *Rivas* that *Hamel*

"stands for the proposition that, if a release date was scheduled and elapsed without the board first having found a valid reason to postpone release, but the inmate was erroneously not released, later events cannot furnish a basis for postponing release; the inmate is entitled to immediate release. That is because an inmate *must* be released from prison on his or her scheduled release date absent valid state action to postpone that release."

*Rivas*, 256 Or App at 835-36 (emphasis in original). *Janowski/Fleming*, on the other hand,

"stands for the proposition that the inmate is *not* entitled to immediate release if a release date has not been set, even if it should have been set for a date that has already passed. In other words, if a court concludes that the board erred by setting an initial projected release date too far in the future, and the date that it should have set has already passed, the inmate does not receive a windfall in the form of release without the board first having the opportunity to determine whether there are reasons to postpone release."

*Rivas*, 256 Or App at 836 (emphasis in original).

Thus, in *Rivas*, because a release date had not been scheduled and elapsed, even if the plaintiff established that he was entitled to additional days of credit for time served,

"he would, as in *Janowski/Fleming*, be entitled to have the release-consideration process commenced, starting with a hearing in the immediate future to establish his release date. After that hearing, the board would be permitted to

conduct an exit interview to determine whether to postpone the release."

*Rivas*, 256 Or App at 837. Because both of those events had already taken place, we concluded that the case was moot. *Id.*

In *Miller*, the petitioner sought judicial review of a July 2011 board order that set his matrix prison term, following the Supreme Court's decision in *Janowski/Fleming*. *Miller*, 261 Or App at 796. That prison term was 108 months longer than the high end of the matrix range that the board had assigned in 1982 when the petitioner first began serving his 30-year minimum sentence for aggravated murder. The board also adhered to a March 11, 2012, parole-release date (which coincided with the completion of the petitioner's 30-year minimum sentence) that the board had set in 2008 after it found that the petitioner was likely to be rehabilitated within a reasonable time and converted his sentence to life in prison with the possibility of parole. *Id.* at 797.

On review, the petitioner contended that the board had erred in calculating a new matrix term for him and in adhering to the March 11, 2012, parole-release date imposed in 2008. The board moved to dismiss the petition for review as moot because, at a release hearing in September 2011, the board had postponed the petitioner's release date under ORS 144.125(3) (1981) from March 11, 2012 to March 11, 2014. We agreed with the board that the case was moot and, therefore, did not address the merits of the petitioner's challenge to the board's post-*Janowski/Fleming* actions.

With respect to the petitioner's challenge to the recalculation of his matrix term, we explained that the issue was moot because, regardless of which matrix calculation applied, the petitioner's prison term under the matrix had expired by the time of the July 2011 hearing, and, under *Janowski/Fleming*, 349 Or at 458-59, the board was entitled to hold a release hearing at some point before the expiration of the petitioner's scheduled release date and to postpone the petitioner's release date upon making certain findings. Because that is what the board had done, any decision as to whether the board had erred in recalculating the petitioner's matrix term "would have no 'practical effect on the

rights of the parties.'" *Miller*, 261 Or App at 799 (quoting *Hamel*, 330 Or at 184).

We came to the same conclusion with regard to the petitioner's contention that the board had erred in adhering to the March 11, 2012, parole-release date instead of assigning a parole-release date that immediately followed the September 2011 release hearing. Citing *Janowski/Fleming*, we explained that ORS 144.125 (1981) entitled the board "to conduct a release hearing before an inmate's parole release date, and to postpone the release date upon finding that any of the three conditions in ORS 144.125(2), (3), or (4) (1981) obtain." *Miller*, 261 Or App at 801. Thus, the board had authority to hold a release hearing in September 2011 (before the petitioner's March 11, 2012, release date) and to postpone the petitioner's release date for between two and 10 years,[9] upon making the requisite findings. *Id.* at 802. The board did that and postponed the petitioner's release date until March 11, 2014. That decision rendered the petitioner's challenge to the board's adherence to the March 11, 2012, parole-release date moot because, even if the petitioner were correct that the board should have set a September 2011 parole-release date instead, the board still could have postponed that release date as it did, to March 11, 2014, a date that is between two and 10 years after September 2011. *Id.* at 803. In other words, regardless of whether the petitioner was correct that the board had erred in setting his release date for March 11, 2012, the board lawfully postponed that date to March 11, 2014; therefore, our decision on that issue would have had no practical effect on the rights of the parties.

With those cases as guidance, the mootness question in the present case appears to turn on whether petitioner had a parole-release date that had passed before the

---

[9] In *Miller*, 261 Or App at 802, we assumed the applicability of OAR 255-062-0011(2), which provided:

"'(2) *Exit Interview Hearing: Crime Commitment Date prior to 11/01/1989—but on or after 10/4/1977:* If the State Board of Parole and Post-Prison Supervision concludes, applying ORS 144.125(3), that an inmate suffers from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board may not defer the projected parole release date for less than two years, or more than 10 years, from the date of inmate's current projected parole release date.'"

board took the action petitioner now complains of—setting a new matrix range and projected parole-release date of June 28, 2013. That is so because, "if a release date was scheduled and elapsed without the board first having found a valid reason to postpone release, but the inmate was erroneously not released, later events cannot furnish a basis for postponing release." *Rivas*, 256 Or App at 835-36 (describing *Hamel*). But, if a release date had not been established, the most to which petitioner would be entitled (assuming his claim of error is correct) would be a remand requiring the board to commence the release-consideration process, starting with a hearing to establish a release date, followed by an exit interview, at which the board would be permitted to postpone his release upon finding that any of the grounds for postponement are present. *Janowski/Fleming*, 349 Or at 459; *Rivas*, 256 Or App at 837. Because those things have already occurred, a decision in the case would have no practical effect on petitioner's rights.

Petitioner contends that there is no evidence in the record that the June 28, 2006, parole-release date, established at his initial prison-term hearing in 1985, has ever been rescinded, and thus it had passed when the board held the *Janowski/Fleming* hearing in 2011 and established a new release date of June 28, 2013. The board, on the other hand, contends that the record establishes that it withdrew the initial prison term and the June 28, 2006, parole-release date, and therefore, the case is moot because, at the time that the board issued the order at issue here—BAF #15—petitioner's scheduled release date of August 5, 2013, established in 2008, had not elapsed.

As explained below, we agree with the board. In arriving at that conclusion, we rely on facts from the record and from the attachments to the parties' briefs. *Cf. First Commerce of America v. Nimbus Center Assoc.*, 329 Or 199, 206, 986 P2d 556 (1999), *abrogated in part on other grounds by Kerr v. Bradbury*, 340 Or 241, 250, 131 P3d 737 (2006) ("If a case is not justiciable because an event that is not reflected in the circuit court record has rendered the case moot, then an appellate court has the inherent power to consider evidence of that event."); *see also Association of Oregon Corrections Employees v. DOC*, 266 Or App 496, 501,

337 P3d 998 (2014) (applying principle in context of judicial review proceeding).[10] Those documents reflect the following pertinent facts.

As previously recounted, petitioner was convicted in 1985 of aggravated murder, robbery in the first degree, and felon in possession of a firearm. He received a life sentence with a mandatory minimum of 20 years' imprisonment for the aggravated murder conviction, a consecutive 20-year indeterminate prison term for first-degree robbery, and a concurrent five-year indeterminate prison term for felon in possession of a firearm (petitioner's "group 1" crimes). On July 3, 1985, the board held a prison-term hearing and, in an unnumbered BAF, set petitioner's matrix range at 258 to 328 months and his prison term at 264 months. The board also established a "release date of 6/28/2006."

On December 9, 1985, petitioner was convicted of supplying contraband and received a 60-month indeterminate prison term to be served consecutively to his term for aggravated murder. As reflected in a BAF dated May 7, 1986, the board calculated petitioner's matrix range for that conviction at 12 to 18 months and set the prison term at 12 months, *therefore establishing a release date of 06/28/2007.* (Emphasis added.)[11] On August 4, 1988, petitioner was

---

[10] In a supplemental excerpt of record, the board provides BAFs and other documents from petitioner's inmate file that were not part of the record before the board and asks that we take judicial notice of those documents. Petitioner objects to that request. However, petitioner does not appear to dispute the occurrence of the events reflected in the documents provided by the board, only their legal significance. Moreover, petitioner argues, in the alternative, that we should consider those extra-record documents for the limited purpose of determining whether the case is moot. We accept petitioner's alternative suggestion. *See First Commerce of America*, 329 Or at 206.

[11] Apparently, the board "summed" the prison term for that conviction with petitioner's earlier prison term to establish a release date of June 28, 2007. *See* ORS 144.785(2) (1983) ("When a prisoner is sentenced to two or more consecutive terms of imprisonment, the duration of the term of imprisonment shall be the sum of the terms set by the board pursuant to the ranges established for the offenses[.]"); OAR 255-35-022 (May 31, 1985) ("The Board shall consider the summed ranges as a single unified range. Any minimum sentences imposed in conjunction with consecutive terms shall be considered a single unified minimum."); *Corgain v. Board of Parole*, 213 Or App 407, 420 n 5, 162 P3d 990 (2007) ("In general, 'summing' refers to the practice of adding the consecutive terms together, and 'unsumming' refers to the board's determination that consecutive sentences are not appropriate, thus allowing those terms to run concurrently.").

convicted of attempted assault in the first degree, for which he was sentenced to 10 years' imprisonment, and inmate in possession of a weapon, for which he received a 20-year prison term, to run consecutively to each other and to the previously imposed sentences. As noted earlier, the convictions described in this paragraph are petitioner's "group 2" crimes.

In a subsequent BAF, dated October 7, 1988, the board states:

"Inmate is alleged to have engaged in serious misconduct. *Rescind parole release date of 06/28/2007.* Face sheet received 10/06/1988 cites new conviction(s) of assa[ult] I at[tempt] and weap[on] inmate from Marion County on 08/04/1988. Prison term hearing will be scheduled after receipt of updated post sentence report."

(Emphasis added.) No release date appears on the BAF.

Subsequently, in BAF #2, dated August 16, 1989, the board notes a continuation and referral for a "corrected PSR" "to be inclusive of all of inmate's convictions from 1985 & 1988," because petitioner's robbery conviction had been vacated, *see* 280 Or App at 412 n 3. Again, no date appears in the "RELEASE DT" block of the BAF.

Because the robbery conviction had been vacated, on December 27, 1989, the board held an administrative-review hearing and, in BAF #3, on petitioner's group 1 crimes, "set a prison term of 264 months; therefore establishing a *review* date of 06/28/2006." (Emphasis added.) With regard to petitioner's group 2 crimes, the board

"unsummed C#87C21930, attempted assault I and inmate in possession of a weapon for an unsummed range of 56-72 months, and set at 60 months. Board must add the 60 month prison term *to the release date to be established and affirmed on the aggravated murder.*"

(Emphasis added.) In BAF #4, dated November 4, 1994, the board noted an error in BAF #3 and determined that petitioner's prison term should have been set at 240 months. It provided, as pertinent:

"Upon review, Board notes an error in sentencing on the aggravated murder, which is an unclassified offense without a crime severity rating or matrix range. Noting that

the consecutive robbery I has been vacated, subject should have been set at 240 months, which is the mandatory minimum on this offense.

"Any time after 15 years subject may petition the Board for a hearing to determine if he has been rehabilitated.

"Board also notes that subject has a consecutive 60 month set [*sic*] to serve on case #87C21930 *after the parole release date on the aggravated murder has been set and affirmed.*

"This action taken per file pass dated 11/04/1994."

(Emphasis added.)

In 1999, 2003, and 2005, the board held murder-review hearings under ORS 163.105 (1983) and found that petitioner had not proved that he was likely to be rehabilitated within a reasonable period of time. Those BAFs (BAF #5, #6, and #9) reflect a "Parole Rel DT" of "00/00/0000."[12] Petitioner sought administrative review of BAF #6, contending, among other things, that the board had "unlawfully rescinded his parole release date of June 28, 2007."[13] In its administrative review response (ARR), the board explained that petitioner was incorrect (based on the board's pre-*Janowski/Fleming* understanding of the law):

"Based on the sentencing structure for Aggravated Murder, pursuant to ORS 163.105, the matrix system does not apply to those offenders who were convicted of Aggravated Murder. The reason for this is that the board is the only body that can change the terms of confinement for the sentence imposed under ORS 163.105. Furthermore, the board cannot change the terms of confinement until it finds that the offender has satisfied his burden of proof by showing by a preponderance of the evidence that he/she is likely to be rehabilitated within a reasonable period of time. The board can only establish a parole release date after making that finding and changing the terms of confinement. * * * In BAF # 6, the board did not indicate that [petitioner] had

---

[12] BAFs #5 and #9 also note petitioner's consecutive 60-month prison term, "which will begin to run when [petitioner] receives a firm date on the aggravated murder sentence."

[13] Petitioner also sought administrative review of BAF #9; the board denied relief.

received a parole release date. *The mention of [petitioner's] having a parole release date as it related to his Aggravated Murder sentence in prior BAFs was done in error. The board does not have the legal authority to grant an offender sentenced on an Aggravated Murder charge a parole release date unless or until it finds that the offender is likely to be rehabilitated within a reasonable period of time."*

(Emphasis added.)

On August 6, 2008, the board conducted a murder-review hearing and found that petitioner had met his burden of proving that he was likely to be rehabilitated within a reasonable period of time and, under ORS 163.105(4) (1983), converted petitioner's aggravated murder sentence to life with the possibility of parole. The board issued BAF #11, in which it stated that petitioner would "now begin to serve the 60-month prison term for his consecutive sentences, which results in a *"projected* parole release date of May 31, 2014," and scheduled an exit-interview hearing. (Emphasis added.) The May 31, 2014, date appears in the "Parole Rel DT" block of the BAF. On April 1, 2010, the board issued BAF #12, correcting BAF #11 in its calculation that petitioner's consecutive prison term began on the issuance date of BAF #11, rather than on the date of the murder-review hearing, resulting in a projected parole-release date of August 5, 2013, with an exit-interview hearing scheduled for February 2013. The "Parole Rel DT" entry in BAF #12 reflects that date.

In February 2011, petitioner sent a request to the board for a file-pass hearing to correct his release date. Petitioner requested that the board acknowledge its "error," reflected in BAF #4, "in taking file pass and changing the June 28, 2006 release date concerning the aggravated murder" and asking the board to "**re-establish**[] the **correct** release date of June 28, 2006 for the aggravated murder." (Boldface in original.) The board denied relief, noting that petitioner's life sentence "has not been discharged by the board" and stating, in part:

"In addition, the Board notes that rather than waiting for you to be granted a firm parole release date on the aggravated murder sentence, the Board made the decision to

allow your consecutive prison term to run from the date of the aggravated murder review hearing at which you were found, by a two to one vote, to be likely to be rehabilitated within a reasonable period of time."

In September 2011, the board held a *Janowski/ Fleming* hearing and issued BAF #15, the order under review here, setting petitioner's prison term at 288 months and his projected parole-release date as June 28, 2013.

The above-described records demonstrate that, contrary to petitioner's contention, petitioner did *not* have a June 28, 2006, parole-release date when the board issued the order under review here. Although petitioner was assigned at his 1985 prison-term hearing a parole-release date of June 28, 2006, in a BAF dated December 9, 1985, the board changed that release date to June 28, 2007 (to reflect petitioner's subsequent conviction and consecutive sentence for supplying contraband), and then, in a BAF dated October 7, 1988 (after petitioner was convicted for assault I and inmate in possession of a weapon), rescinded the June 28, 2007, parole-release date. As outlined above, subsequent BAFs and other records after that date (until August 6, 2008, when the board found that petitioner had met his burden to prove that he was likely to be rehabilitated within a reasonable period of time and set a new projected parole-release date), are all consistent with that understanding. Those documents either reflect a parole-release date for petitioner of "00/00/0000" or that block on the BAF is left blank. The BAFs also repeatedly refer to a parole-release date for petitioner that is *"to be* established" or note that petitioner has a consecutive 60-month sentence to be served *"after"* a parole-release date for his aggravated murder conviction *"has been set and affirmed"* or *"when [petitioner] receives a firm date on the aggravated murder sentence."* (Emphases added.) Finally, petitioner himself, in his February 2011 file-pass request, appears to have recognized that his June 28, 2006, parole-release date no longer existed.

Petitioner, nonetheless, contends that the board never rescinded the June 28, 2006, release date; he asserts that, although the October 7, 1988, BAF rescinded a *June 28, 2007*, parole-release date, the *June 28, 2006*, release date

was left intact.[14] That argument misapprehends the effect of the May 7, 1986, BAF in which the board "summed" petitioners' prison terms and established a new parole-release date of June 28, 2007. In other words, petitioner's previous parole-release date ceased to exist when the board summed his prison terms and established the June 28, 2007, parole-release date. And that date, as everyone agrees, was later withdrawn. Thus, at the time that the board took the action complained of here, petitioner's projected parole-release date—August 5, 2013, established in 2008—had not lapsed. Therefore, as in *Rivas* and *Miller*, petitioner's challenge to the board's action is moot because the most to which he would be entitled is an exit interview, which he has had and at which his parole-release date was extended.

Petitioner also contends that this case is distinguishable from *Rivas* because, unlike in that case, he has sentences that are consecutive to his life sentence. He contends that that distinction results in a practical effect on his rights if he prevails that was not present in *Rivas*—that is, if we conclude that the board was required to follow its initial prison-term order, he "would have accrued several years of earned-time credits, resulting in either his immediate release or a recalculation of the consecutive sentence release date." As he explains in his reply brief, he began to serve his consecutive sentences in 2008 when the board converted his aggravated murder sentence to life with the possibility of parole;[15] however, if he prevails in his view that the board was required to adhere to the June 28, 2006, initial parole-release date, then he

"would have started his consecutive prison term two years earlier and, as a result, the consecutive terms would have

[14] Petitioner also argues that BAF #3, dated December 27, 1989, recognized the existence of the 2006 parole-release date. We disagree; BAF #3 refers to a "review date" of June 28, 2006.

[15] As noted above, 280 Or App at 423-24, the board decided to allow petitioner's consecutive prison term for his group 2 crimes to begin running from the date of the murder-review hearing at which the board found that he was likely to be rehabilitated within a reasonable period of time, although, as we held in *Corgain*, an inmate does not begin serving consecutive sentences until the inmate is released under ORS 144.125 from service of the inmate's aggravated murder sentence. *Corgain*, 213 Or App at 421 ("[T]he legislature intended the board to apply ORS 144.125 (1981) in making its determination as to whether an inmate should be released from an aggravated murder sentence and begin serving a consecutive sentence.").

expired two years earlier. Additionally, petitioner would have begun to accrue good-time reductions on June 28, 2006, the date the prison term on his life sentence passed with no action from the board."

Petitioner's attempted distinction is illusory. As we understand it, in petitioner's view, if the board had re-established the June 28, 2006, parole-release date for his group 1 crimes when the board held the *Janowski/Fleming* hearing in September 2011, he would have begun serving his consecutive group 2 sentences in June 2006 rather than June 2008, resulting in a projected parole release date of June 2011—two years earlier than the June 2013 date that the board set at the hearing. However, under the applicable case law, even if petitioner is correct about that, the most to which petitioner would be entitled is an exit interview, at which, under ORS 144.125(3) (1983), the board could decide to postpone his release. That is because, as we have already explained, at the time that the board held the *Janowski/Fleming* hearing, there was not an extant parole-release date for petitioner that had elapsed. Thus, *Hamel* does not apply, and, under *Janowski/Fleming*, *Rivas*, and *Miller*, even if we were to conclude that the board erred, as petitioner contends, by setting his projected parole-release date too far in the future, petitioner is entitled only to "have the release-consideration process commenced," including "an exit interview to determine whether to postpone the release." *Rivas*, 256 Or App at 837. Here, the board already has done that—it held two exit hearings under ORS 144.125 (1983) and determined, in each instance, that petitioner's projected parole-release date must be postponed because he suffers from a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community." ORS 144.125(3) (1983). Accordingly, petitioner already has received the only relief to which he would be entitled if his view were to prevail on judicial review of the board's September 2011 order.

In summary, because a decision in this case would have no practical effect on the rights of the parties to the controversy, it is moot. *Brumnett*, 315 Or at 406.

Petition for judicial review dismissed.